UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

PREFERRED CARE, INC., et al.,      )
                                   )
        Plaintiffs,                )          Civil No. 16-13-ART
                                   )
v.                                 )
                                   )      **MEMORANDUM OPINION AND**
RANDY HOWELL, *Administrator of the*  )              **ORDER**
*Estate of George Howell*,         )
                                   )
        Defendant.                 )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

George Howell ("George") was a resident of Salyersville Nursing and Rehabilitation Center ("Salyersville") for eight years. George was of unsound mind throughout his stay at Salyersville. R. 1-2 ¶ 2. Because of this, defendant Randy Howell ("Randy"), George's son, was appointed George's guardian. R. 1-3 (order of appointment of guardian). While acting as George's guardian, Randy allegedly signed an Alternative Dispute Resolution Agreement (the "arbitration agreement") at Salyersville's request. R. 1-1 (arbitration agreement). This agreement stated that any disputes arising out of George's stay at Salyersville would be resolved by arbitration, rather than in the court system. *Id.* at 1–2. Randy asserts that he does not believe that Salyersville ever asked him to sign the arbitration agreement or ever gave him a copy of the agreement. R. 7-5 at 1. The agreement, however, does appear to bear Randy's signature. R. 1-1 at 5.

Randy alleges that his father developed serious injuries while under the care of the plaintiffs, causing him to suffer pain and mental anguish. R. 1-2 ¶ 39. After his father's death, Randy filed a state-court action on December 17, 2015, alleging negligence and

several other claims against the plaintiffs in this action. *See id.* (*passim*). In that action, Randy also sued Sharon Welch, Glenn Cox, and Elaine Jones, all of whom were administrators at Salyersville. *Id.* Welch and Cox are Kentucky citizens. *Id.* ¶¶ 21–22.

Six weeks later, the defendants in the underlying state-court action filed this action against Randy—thus becoming the plaintiffs for the purposes of this lawsuit—asserting breach of the arbitration agreement and seeking the enforcement of that agreement under the Federal Arbitration Act ("FAA"). R. 1. But the three administrators that Randy sued in the underlying state-court action did not join the plaintiffs in this action. *See id.* Randy now moves to dismiss this action on three grounds: lack of subject-matter jurisdiction, *Colorado River* abstention, and failure to state a claim under Rule 12(b)(6). R. 7. Because the wrongful-death beneficiaries were not parties to the arbitration agreement, the agreement is not enforceable against them. So Randy's motion to dismiss will be granted with respect to those claims. For the reasons discussed below, however, Randy's remaining arguments fail. So the motion to dismiss will be denied with respect to those arguments.

## I.

Randy first argues that the Court lacks subject-matter jurisdiction over this case because the plaintiffs brought it under the FAA. The FAA does not provide an independent basis of federal jurisdiction. *Vaden v. Discover Bank*, 556 U.S. 49, 53 (2009) ("Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, save for the arbitration agreement, over a suit arising out of the controversy between the parties." (internal quotation marks omitted)); *Sun Healthcare Grp., Inc. v. Dowdy,* No. 5:13-CV-00169-TBR, 2014 WL 790916, at *5 (W.D. Ky. Feb. 26, 2014) ("The FAA bestows no federal jurisdiction but

rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute."). Thus, courts have jurisdiction over an FAA action only if there is another basis for jurisdiction. Here, the plaintiffs argue that the Court has jurisdiction on the basis of diversity. In their complaint, the plaintiffs assert that they are all citizens of Texas, that Randy is a citizen of Kentucky, and that the amount in controversy is more than 75,000 dollars. *See* R. 1 at 3–4. Thus, it seems that the plaintiffs have sufficiently pled diversity of citizenship. *See* 28 U.S.C. § 1332(a).

Randy responds that the plaintiffs failed to join two administrators[1] whom Randy named as defendants in his state-court complaint. R. 7-1 at 4. Because Randy sued these administrators below, he argues, they are indispensable parties to the plaintiffs' federal-court action to compel arbitration. Thus, he asserts, the plaintiffs were required to join these administrators when the plaintiffs filed suit in federal court. And since the two non-joined administrators and Randy are all Kentucky citizens, Randy argues that there is not complete diversity.

The central premise of this argument is that the administrators are in fact indispensable parties. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (explaining that diversity jurisdiction can only be defeated by a non-joined, non-diverse joint tortfeasor if that party is indispensable under Rule 19). But here, Randy sued the administrators as joint tortfeasors. *See* R. 1-2. And the Supreme Court has held that joint tortfeasors are simply permissive parties to an action against one of them. *Temple*, 498 U.S. at 8; *see also* Fed. R. Civ. P. 19 Advisory Comm. Notes (clarifying that "a tortfeasor with the usual 'joint-and-

---

[1] The three administrators that Randy sued in the underlying action failed to join the plaintiffs in this action. But, because only Welch and Cox are Kentucky citizens who would destroy diversity, Randy bases his argument on these two administrators alone.

several' liability is merely a permissive party to an action against another with like liability").

The Sixth Circuit agreed that joint tortfeasors are not indispensable parties to an action to compel arbitration in *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001). There, the plaintiff sued a brokerage firm in state court and joined the firm's branch manager as a defendant. The firm then sued the plaintiff in federal court, seeking to compel arbitration under the Federal Arbitration Act. In response, the plaintiff moved to dismiss for lack of subject-matter jurisdiction, arguing that the branch manager was an indispensable party to the litigation. The circuit rejected that argument, holding that, when a company sues a plaintiff seeking to compel arbitration, it need not join any of its employees, even if the plaintiff joined them below. *Id.* at 205–06. As the circuit explained, "[a]ny ruling to the contrary would virtually eliminate the availability of federal courts to enforce arbitration clauses in diversity cases by the simple expedient of one of the parties filing a preemptive suit in state court with at least one non-diverse defendant." *Id.* at 205 (citing *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995)). Thus, the administrators here are not an indispensable party to the plaintiffs' federal action to compel arbitration.

Randy seems to argue that *PaineWebber* has been abrogated by the Supreme Court's decision in *Vaden v. Discover Bank*, 556 U.S. 49 (2009). In *Vaden*, the Court held that a federal court should determine if it has jurisdiction over an FAA action by "looking through" an FAA petition to the parties' underlying substantive controversy. *Id.* at 62. The Court also held that a district court has jurisdiction under the FAA "only if, 'save for' the [arbitration] agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." *Id.* at 66. Thus, according to Randy, *Vaden* requires this Court

4

to ask if it can "hypothetically step into the shoes of the State's trial court, in resolving the underlying dispute." R. 7-1 at 16. If the answer is no, he says, the federal court does not have jurisdiction to enforce the agreement. *Id.*

But Randy ignores the fact that *Vaden* explicitly limited its holding to cases involving federal-question jurisdiction. 556 U.S. at 62, 66; *Rutherford*, 605 F.3d at 488 ("*Vaden* does not directly control [diversity] cases because the Supreme Court carefully defined the issues and limited its holding to [FAA petitions] based upon federal question jurisdiction[.]"). As such, *PaineWebber* is still good law, and the plaintiffs' failure to join the two administrators does not undermine this Court's jurisdiction.

## II.

Randy next argues that this Court should abstain from exercising jurisdiction in favor of the pending state-court action. R. 7-1 at 22. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," so "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist v. United States*, 424 U.S. 800, 813, 817 (1976). In some "exceptional" circumstances, however, a federal district court may abstain from exercising its jurisdiction due to a concurrent state-court action. *Id.* at 817. The decision to abstain in such situations is based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (internal quotation marks omitted).

A district court must consider eight factors when deciding whether to abstain from exercising its jurisdiction in favor of the state court's jurisdiction. *Romine v. Compuserve Corp.*, 160 F.3d 337, 340–41 (6th Cir. 1998). These factors are: "(1) whether the state court

5

has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction." *Id.* (citations omitted). These factors are not a "mechanical checklist;" rather, the Court must balance them under the circumstances of a given case, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

Randy does not contest that the first three *Colorado River* factors support federal jurisdiction.[2]  R. 7-1 at 23–26. As such, this Court will focus on the last five factors to determine whether abstention is appropriate. With respect to the fourth factor—the "order in which jurisdiction was obtained"— Randy filed his action in state court six weeks before the plaintiffs filed this action in federal court. R. 7-1 at 23–24 (noting the state-court action was filed on December 17, 2015, while this action was filed on February 2, 2016). As such, this factor appears to cut in favor of abstention. This factor, however, "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21 (holding that a 19-day difference between the filings of the state court and federal court actions was immaterial

---

[2] In terms of the third factor, Randy admits that courts have found that "allowing a federal court and state court to interpret arbitration clauses differently will not necessarily cause piecemeal litigation." R. 7-1 at 23. However, Randy still urges this Court to consider the possibility of the arbitration agreement being found valid in one forum and invalid in the other. *Id.* Such disparate findings, Randy argues, do not promote judicial economy, as intended by *Colorado River*. *Id.* But "the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20 (emphasis in original). As such, the third factor does not favor abstention. *See PaineWebber*, 276 F.3d at 207 ("[T]he desire to avoid litigating a single issue in multiple forums is insufficient to overcome the strong federal policy supporting arbitration." (citations omitted)).

given the absence of progress in the state-court action and the substantial proceedings that had occurred in the federal court action).  Here, the plaintiffs have only recently filed their answers to Randy's complaint in the state-court action, and they have not filed a motion to compel arbitration therein.  R. 8 at 17–18.  Little progress has therefore been made in either action.  Thus, this factor weighs against abstention or is neutral at best.  Similarly, the seventh factor—"the relative progress of the state and federal proceedings"—does not favor abstention because neither case has progressed into discovery.  *See* R. 7-1 at 24 (noting that the state court denied the plaintiffs' motion to dismiss, but not noting that discovery had begun); *see also* R. 7-2 (state-court record).

Randy argues that the fifth factor—"whether the source of governing law is state or federal"—supports abstention because he challenges the validity of the arbitration agreement by raising a contractual defense.  R. 7-1 at 24; *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (holding that when deciding whether parties have agreed to arbitrate claims, "courts generally . . . should apply state-law principles that govern the formation of contracts").  Federal law, however, provides the rule of decision where the sole issue is "whether the case should be submitted to arbitration under . . . the FAA."  *PaineWebber*, 276 F.3d at 208 (quoting *Snap On Tools Corp. v. Mason*, 18 F.3d 1261, 1266 (5th Cir. 1994)).  Here, Randy does challenge the validity of the arbitration agreement, so it appears that both federal law and state law govern this case.  But "the presence of federal law issues must always be a major consideration weighing against surrender of federal jurisdiction in deference to state proceedings."  *Romine*, 160 F.3d at 342 (quoting *Moses H. Cone*, 460 U.S. at 26).  This factor is less significant where concurrent jurisdiction exists, as it does here, since both the state court and the federal court apply the law in this case.  *PaineWebber*, 276

F.3d at 208 (citing *Romine*, 160 F.3d at 342).   Regardless, however, this factor weighs against abstention.

The plaintiffs argue that the sixth factor—"the adequacy of the state-court action to protect the federal plaintiff's rights"—favors federal jurisdiction because the state court will not adequately protect their rights under the FAA.   R. 8 at 19.   But the plaintiffs offer no reason why the state court cannot adequately protect their rights, *see id.*, and the Court can find none.   The FAA "extends Congress's legislative authority to the maximum extent permitted under the Commerce Clause, and is therefore binding on state courts that interpret contracts involving interstate commerce."   *PaineWebber*, 276 F.3d at 208 (citation omitted). And this Court sees no reason why the state court would shirk its duty to adequately enforce the FAA in this case.

Finally, the eighth factor—"the presence or absence of concurrent jurisdiction"— supports abstention only marginally, if it does so at all.   *See PaineWebber*, 276 F.3d at 208– 09.   Under this factor, if concurrent jurisdiction exists, then the court is more likely to abstain.   Now, it is true that concurrent jurisdiction exists in this case.   This factor, however, "is insufficient to justify abstention despite concurrent jurisdiction in state and federal court where a congressional act provides the governing law and expresses a preference for federal litigation."   *Id.* at 208.   The FAA expresses such a preference.   *Moses H. Cone*, 460 U.S. at 25 n.32 (The FAA "represents federal policy to be vindicated by the federal courts where otherwise appropriate.").   So this factor marginally favors abstention.

Overall, the above analysis shows that only the sixth and eighth factors support abstention.   All of the other factors either favor federal jurisdiction or are, for the most part, neutral.   And, as the Supreme Court emphasized in *Moses H. Cone*, "our task in cases such

as this is not to find some substantial reason for the *exercise* of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." 460 U.S. at 25–26 (emphasis in original) (internal quotation marks omitted). Here, no such exceptional circumstances exist. There is no question that the state court can adequately protect the plaintiffs' rights. But that does not justify a federal court abandoning its "virtually unflagging obligation . . . to exercise the jurisdiction given [it]." *PaineWebber*, 276 F.3d at 209 (quoting *Colorado River*, 424 U.S. at 817). This Court therefore will exercise its jurisdiction over this case.

III.

Finally, Randy argues that the plaintiffs' complaint should be dismissed because the underlying arbitration agreement is invalid and unenforceable. The FAA was enacted "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that a district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (emphasis in original). The FAA applies to written agreements to arbitrate disputes that arise out of contracts involving transactions in interstate commerce. 9 U.S.C. § 2. Under the FAA's terms, such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* Thus, Randy's motion to dismiss will be granted only if the Court finds that "grounds exist at law or in equity for the revocation" of the arbitration agreement. Randy makes six arguments for why the arbitration agreement is invalid and unenforceable.

9

A.

First, Randy argues that the arbitration agreement is void because he did not have the authority to bind the wrongful death beneficiaries to the agreement.[3]  R. 7-1 at 29–30.  Randy brought the underlying state-court action on behalf of George's estate and on behalf of George's wrongful death beneficiaries.  A representative of a decedent can bring a wrongful death claim "[w]henever the death of a person results from an injury inflicted by the negligence or wrongful act of another" for damages against the person or agent who caused the death.  Ky. Rev. Stat. § 411.130(1).  In the underlying state-court action, Randy brought two broad claims within the scope of the wrongful-death statute: negligence and corporate negligence.  R. 1-2 ¶¶ 44, 46–59, 72–79 (asserting that the negligence and corporate negligence of the defendants in the underlying state-court action caused George to suffer injuries that resulted in his death).

Under Kentucky law, a decedent (or a representative thereof) has no authority to bind wrongful death beneficiaries to an arbitration agreement.  *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 313–14 (Ky. 2016); *see also Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 597–99 (Ky. 2012).  This is because a wrongful death claim "is not derived through or on behalf of the resident, but accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss[.]"  *Ping*, 376 S.W.3d at 599.  So the wrongful death beneficiaries were not parties to the arbitration agreement.  *Id.* at 598–99.  Under federal law, "arbitration is a matter of contract and a party

---

[3] It is true that Randy signed the arbitration agreement and is also a wrongful-death beneficiary, so it may appear on the surface that he was a party to the arbitration agreement and should be bound by it.  But Randy signed the arbitration agreement on behalf of his father, not on behalf of himself.  So Randy was not a party to the agreement. *See Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 596 (Ky. 2012) (holding that a person signing an arbitration agreement using power of attorney is not a party to that agreement "merely by virtue of having signed it").

cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted). Thus, Randy did not have the authority to bind the wrongful-death beneficiaries to the agreement.

One might argue, although the plaintiffs here do not, that the rule laid down in *Ping* and *Whisman* is preempted by the FAA itself, particularly given the Supreme Court's interpretation of the FAA in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011) ("When state law prohibits the outright arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."). But the Sixth Circuit has already considered that argument and rejected it explicitly. *See Richmond Health Facilities v. Nichols*, 811 F.3d 192 (6th Cir. 2016). There, the court explained that the *Ping* and *Whisman* do not prohibit the arbitration of wrongful-death claims. Instead, the issue at the heart of *Ping* and *Whisman* is consent—the wrongful-death beneficiaries never agreed to enter into the arbitration agreement, so they cannot be bound by it. *Id.* at 200. So the Court held that the rule from *Ping* and *Whisman* is not preempted by the FAA. *Id.* at 198–200. Like in *Ping* and *Whisman*, the wrongful-death beneficiaries here are not bound by the arbitration agreement, so the motion to compel with respect to those claims must be dismissed.

Randy also brought two non-wrongful-death claims, however, in his underlying complaint: violations of the rights of long term care residents under KRS § 216.515 and personal injury, R. 1-2 ¶¶ 60–64, 80–83. These claims are not brought on behalf of Randy or the estate individually, but are instead brought on behalf of George. *See Whisman*, 478 S.W.2d at 314 (noting that personal injury claims and statutory claims arising under KRS

11

§ 216.515 belong to the decedents).  So Randy and the estate are bound by the arbitration agreement for the litigation of these claims.  The question remaining, then, is whether the arbitration agreement is valid and enforceable.

## B.

Randy also makes a passing argument that the arbitration agreement is unenforceable because he did not have the authority to bind George to the agreement.  *See* R. 7-1 at 29.  But Randy offers no argument or analysis in support of this assertion.  *See id.*  Nor does he cite to any case law for the proposition that a guardian cannot execute an arbitration agreement on behalf of his ward.  *See id.*  It is not the Court's duty to make Randy's argument for him.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks omitted)).  As such, the Court will proceed under the assumption that Randy had the authority to enter the arbitration agreement on behalf of his father.

## C.

Randy next argues that the arbitration agreement is invalid because it does not involve a transaction in interstate commerce.  R. 7-1 at 27–29.  And a transaction involving interstate commerce is one of the FAA's requirements.  *See* 9 U.S.C. § 2.  Specifically, Randy argues that the arbitration agreement was between two intrastate parties, a Kentucky citizen and a Kentucky private-care facility.  And the purpose of the agreement was to arbitrate disputes arising out of services performed in Kentucky.  Thus, according to Randy, the arbitration agreement does not evidence transactions involving commerce across state lines.

12

The term "involving commerce" in the FAA is "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quoting *Allied-Bruce Terminix Cos.*, 513 U.S. 265, 273–74 (2003)). Here, Randy acknowledged in his state-court complaint that Salyersville received "federal and state reimbursement." R. 1-2 ¶ 34. And the receipt of federal funds affects interstate commerce, as federal funding by its nature involves interstate commerce. *United States v. Davis*, 707 F.2d 880, 884 (6th Cir. 1983) ("[Federal] funds plainly were in interstate commerce."). The arbitration agreement therefore involved interstate commerce, so Randy's argument fails.

## D.

Randy claims that the arbitration agreement is unenforceable because it is unconscionable. Procedural unconscionability, or "unfair surprise" unconscionability, "pertains to the process by which an agreement is reached and the form of the agreement, including the use therein of fine print and convoluted or unclear language." *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 342 n.22 (Ky. Ct. App. 2001) (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)). "[It] involves, for example, 'material, risk-shifting' contractual terms which are not typically expected by the party who is being asked to 'assent' to them and often appear [ ] in the boilerplate of a printed form." *Id.* (quoting *Harris*, 183 F.3d at 181). Randy argues that the arbitration agreement here was "part of a mass-produced, boiler-plate, pre-printed document[.]" R. 7-1 at 30. But even if the agreement were boilerplate, Randy points to nothing in the agreement that suggests its terms were "material [and] risk-shifting" or unexpected. And the agreement itself refutes

13

any suggestion that this was the case.  The agreement was a standalone document, was written in normal-sized font, used clear language, and was marked at the top—in large, bolded, underlined letters—with the following words: "Alternative Dispute Resolution Agreement - Kentucky (SIGNING THIS AGREEMENT IS NOT A CONDITION OF ADMISSIBILITY OR CONTINUED RESIDENCE IN THE FACILITY)."  R. 1-1 at 1 (emphasis in original).

Randy also states that the agreement was "likely presented to George Howell, or his purported representative, within a lengthy stack of admissions paperwork."  R. 7-1 at 30.  By asking Randy to sign all the documents at the same time, Randy seems to argue, the plaintiffs asked too much of him.  Thus, he concludes—without citing any authority in support—the arbitration agreement was unconscionable.  This Court, however, is aware of no authority suggesting that an agreement is unconscionable simply because it was signed along with other agreements, no matter how numerous.

Finally, Randy argues that the arbitration agreement was unconscionable because there was a "gross disparity of bargaining power between the parties."  R. 7-1 at 31.  But the doctrine of unconscionability is "directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain."  *Conseco*, 47 S.W.3d at 341 (internal quotation marks omitted).  It is therefore not enough for Randy to allege that the plaintiffs had disparate bargaining power.  Instead, Randy must show that the contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other."  *Id.* (internal quotation marks omitted).  Randy has failed to meet this burden, and there is nothing in the agreement to suggest that it was "one-

sided, oppressive and unfairly surprising." *Id.* In sum, the arbitration agreement was not unconscionable.

E.

Next, Randy argues that the arbitration agreement is void as against public policy. R. 7-1 at 32. The Supreme Court has stated that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (internal quotation marks omitted). But, according to Randy, Congress and Kentucky did not intend disputes involving long-term care facility residents and their rights to be included in arbitration. R. 7-1 at 32. Randy argues (without support) that "[t]he public policy favoring arbitration exists fundamentally to reduce transaction costs in the commercial context—not to reduce vulnerable citizens' access to a full vindication of their statutory rights involving . . . personal physical integrity." *Id.* Randy also cites to a federal regulation and a Kentucky statute that he believes support this argument. *Id.* at 33 (citing 42 C.F.R. § 483.10 (prohibiting a nursing facility from interfering with a resident's exercise of his rights) and Ky. Rev. Stat. § 216.515 (stating that resident may bring an action under this section in any court of competent jurisdiction)).

Even if Randy is correct that these statutes reflect a public policy against arbitration, the FAA overrides such a policy. *Concepcion*, 131 S. Ct. at 1747–48 (explaining that "a court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable" (internal quotation marks omitted)). In *Marmet Health Care Center, Inc. v. Brown*, the Supreme Court reversed a West Virginia Supreme Court decision that held that arbitration agreements for nursing homes were invalid because they violated state public policy. 132 S. Ct. 1201, 1202–03 (2012). The Court flatly

15

rejected this claim, holding that the FAA "requires courts to enforce the bargain of the parties to arbitrate." *Id.* at 1203; *see also id.* at 1204 (instructing the West Virginia court on remand to consider whether the arbitration clauses were unenforceable "absent [the specified] general public policy"). Kentucky public policy therefore cannot forbid mandatory arbitration agreements in the context of nursing-home contracts, as such a state law would be preempted by the FAA. *Brookdale Sr. Living Inc. v. Stacy*, 27 F. Supp. 3d 776, 789 (E.D. Ky. 2014). So the arbitration agreement here is not void against public policy.

F.

Finally, Randy argues that the arbitration agreement is unenforceable because he was fraudulently induced to enter it. R. 7-1 at 34–35. Randy claims that he does not remember being shown the agreement or signing it. R. 7-5 at 1. But Randy does remember the plaintiffs asking him to sign blank documents for the purpose of obtaining medical treatment for his father. *Id.* Beyond these statements, Randy also points to several problems with the arbitration agreement that suggest he did not actually sign it.[4] R. 7-1 at 34–35. For example, Randy's name was originally written on the "print name" line as "Richie Howell" and crossed out to say "Randy Howell." R. 1-2 at 5. Moreover, the place for initials in the agreement is unsigned. *Id.* at 4. And the page with Randy's signature is a faxed page, while the rest of the document was not faxed. *Id.* at 5. These facts, Randy argues, support an inference that the plaintiffs procured the agreement by fraud.

Even if all of Randy's assertions are true, however, they cannot defeat the enforcement of the arbitration agreement. "It is the settled law in Kentucky that one who

---

[4] Randy does not contest that the signature on the agreement is his. *See* R. 7-1. Instead, he states only that he does not remember signing the document.

signs a contract is presumed to know its contents." *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959). Randy presents no evidence, beyond his claim that he never saw nor signed the agreement, that the plaintiffs attempted to conceal the agreement from him or fraudulently induced him to enter it. And Randy's signature on the document creates a presumption that Randy knew its contents and freely agreed to them. *See Hathaway v. Eckerle*, 336 S.W.3d 83, 89–90 (Ky. 2011). So Randy's argument that he was fraudulently induced to enter the agreement fails.

IV.

In conclusion, the arbitration agreement is not enforceable against the wrongful-death beneficiaries. Thus, the complaint, R. 1, must be dismissed as far as it asks this Court to compel arbitration of the wrongful-death claims. But the plaintiffs have stated a claim upon which relief can be granted that the arbitration agreement is valid and enforceable as to the remaining claims in the underlying state-court complaint.

Accordingly, it is **ORDERED** that Randy Howell's motion to dismiss, R. 7, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to the wrongful-death claims asserted by Howell in the underlying state-court complaint, R. 1-2. It is **DENIED** as to the remaining claims in the underlying state-court complaint.

This the 13th day of May, 2016.



**Signed By:**

*__Amul R. Thapar__*

**United States District Judge**