UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| PREFERRED CARE, INC., et al., | ) | |
| Plaintiffs, | ) | Civil No. 16-13-ART |
| v. | ) | |
| RANDY HOWELL, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

An arbitration agreement is not a piecrust promise—easily made and easily broken.[1] Rather, the agreement is a binding promise to settle disputes outside of court. Randy Howell and Preferred Care made that agreement.[2] Then Randy, apparently mistaking cement for piecrust, broke his promise and sued Preferred Care in state court. But he has not provided a valid reason for doing so. Thus, the Court must compel the parties to arbitrate.

### I. The Facts

George Howell was a resident of Salyersville Nursing & Rehabilitation Center for eight years. *See* R. 1-2 ¶ 2. During his stay, George was of an "unsound mind." *Id*. So the state appointed him a guardian—his son, Randy Howell. R. 1-3 (order of appointment of guardian). As guardian, Randy signed an arbitration agreement on behalf of George. R. 1-1 (arbitration agreement). Under that agreement, Randy promised to use arbitration to resolve

---

[1] MARY POPPINS (Disney 1964).

[2] The four plaintiffs in this case are related entities: Preferred Care, Inc., Kentucky Partners Management, LLC, Salyersville Health Facilities, LP, and Preferred Care Partners Management Group, LP. R. 1. For simplicity, the Court will refer to the plaintiffs collectively as "Preferred Care." Additionally, because this case involves both George and Randy Howell, the Court will refer to each by his first name to avoid confusion.

"any and all disputes" about George's stay at Salyersville. *Id*.; R. 1 ¶ 17–20. In other words, if George had any claims of negligence, tort, or other violations of rights, he would pursue them in arbitration—not in a state or federal court. *See* R. 1-1 at 2.

Several years later, George passed away. *See* R. 1-2 ¶ 2. And Randy believed that Preferred Care was responsible. *See id.* So he sued Preferred Care and its affiliates in state court. *Id.* at 1. In his complaint, Randy alleged, among other things, that Preferred Care was negligent in caring for George and violated George's rights as a long-term-care resident.[3] *Id.* ¶¶ 46–64. In response, Preferred Care sued Randy in this Court. R. 1.

## II. The Dispute

Preferred Care alleges that Randy violated the arbitration agreement when he filed suit in state court. R. 1. And, Preferred Care wants that agreement enforced. R. 14. So, Preferred Care asks the Court to do two things: compel Randy to arbitrate his claims, and enjoin him from further pursuing his state court action. R. 14-3 at 1.

### A. Preferred Care's Motion to Compel Arbitration

Preferred Care first moves the Court to compel arbitration. Under the Federal Arbitration Act ("FAA"), the Court must compel arbitration when there is a valid, written arbitration agreement between the parties. 9 U.S.C. § 2; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218–19 (1985) (explaining that the FAA requires courts to enforce valid arbitration agreements). Thus, the Court must decide two questions: (1) whether the parties agreed to arbitrate, and (2) whether that agreement covers the claims at issue. *See Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

---

[3] Randy also brought wrongful-death claims in the state-court action, on behalf of George's wrongful death beneficiaries. *See* R. 1-2. The Court, however, has dismissed Preferred Care's arguments that Randy must arbitrate those claims because the arbitration agreement did not bind the wrongful death beneficiaries. R. 12 at 10–11.

### 1. Whether the parties agreed to arbitrate

Arbitration agreements are, at their core, simply contracts. State law governs contracts. *See Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011). So Kentucky law determines whether Randy agreed to arbitrate. In Kentucky, like most states, an enforceable contract must have two things: consideration and mutual assent. *See Day v. Fortune High-Tech Marketing*, 536 Fed. App'x 600, 603 (6th Cir. 2012); *Cuppy v. Gen. Accident Fire & Life Assurance Corp.*, 378 S.W.2d 629, 632 (Ky. Ct. App. 1964).

The agreement here has both required elements within its four corners. First, the agreement states that the parties agree to arbitrate their disputes. R. 1-1 at 1. And a mutual promise by both parties to submit to arbitration is adequate consideration. *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013). Second, both Randy and a Preferred Care representative signed the agreement, clearly expressing their assent to its terms. R. 1-1 at 5; *see also Dixon v. Daymar Colleges Grp., LLC*, 483 S.W.3d 332, 346 (Ky. 2015) (reasoning that one who signs a contract is bound to the terms listed above that signature). Thus, it seems the parties "agreed to arbitrate." *Stout*, 228 F.3d at 714.

But Randy disagrees. He responds that there is no valid arbitration agreement between him and Preferred Care. As grounds, he makes three arguments: (1) that Preferred Care failed to authenticate the document, (2) that Preferred Care did not prove the essential elements of the agreement, and (3) that Randy lacked the authority to bind George to arbitration.

3

### (a) Authentication

First, Randy argues that Preferred Care did not "authenticate" the agreement. R. 15 at 2–3. Authentication is a threshold—but relatively simple—requirement. To rely on a document, a party is required to show enough evidence to "support a finding" that the document is what the party says it is. Fed. R. Evid. 901(a). To determine whether that burden is met, the Court can consider the agreement's appearance, contents, substance, and characteristics. *See* Fed. R. Evid. 901(b)(4).

Preferred Care has met that burden. First, the title of the document is "Alternative Dispute Resolution Agreement – Kentucky." R. 1-1 at 1. Next, the document is consistent throughout: Every page has consistent page numbers, a consistent footer, and consistent dates. *See id.* at 1–5. Most importantly, the agreement bears George's name, as well as Randy's signature—which, notably, Randy does not contest. *Id.* at 5. Taken together, these facts are sufficient evidence "to support a finding" that the document is what Preferred Care says it is—an arbitration agreement. *See* Fed. R. Evid. 901(a).

Randy, however, remains unconvinced. He correctly notes that the signature page, unlike the four previous pages of the agreement, has a header containing fax information. R. 15 at 6; *see* R. 1-1 at 5. So, in his view, Preferred Care has "no evidence" to support its assertion that the attached document is the original arbitration agreement. R. 15 at 3. In making this point, Randy is essentially arguing that the document is not the original—*i.e.*, that the attached agreement is a duplicate. But a duplicate is allowed as long as there is no "genuine question" about its authenticity. *See* Fed. R. Evid. 1003. And, as explained above,

the document's other characteristics suggest that it is, in fact, an arbitration agreement. So Randy's first argument fails.

### (b) Essential terms

Second, Randy argues that the agreement is not an enforceable contract because Preferred Care has not proven that Howell agreed to the essential terms. R. 15 at 4–5. True, Preferred Care and Randy must have agreed on "all material and essential terms." *Walker v. Keith*, 382 S.W.2d 198, 201 (Ky. 1964) (quoting *Johnson v. Lowery*, 270 S.W.2d 943, 946 (Ky. 1954)). But Randy's signature on the document indicates that he knew its contents before signing. *See Sears, Roebuck & Co. v. Lea*, 198 F.2d 1012, 1015 (6th Cir. 1952) ("It is the settled rule in Kentucky that one who signs a contract is presumed to know its contents[.]"); *Clark v. Brewer*, 329 S.W.2d 384, 397 (Ky. 1959). Randy even confirmed his knowledge: Just above his signature, the agreement says that—by signing the agreement—Randy acknowledges that he has read it all. R. 1-1 at 5. And again, Randy does not contest that the signature is his. So it looks like Randy has agreed to the "essential terms."

Randy nonetheless retorts that his signature does not bind him because the agreement is incomplete. *See* R. 15 at 5. In support of this argument, he cites several cases with circumstances quite different than his own. In one unpublished case, the court concluded that a party did not prove the essential terms of an agreement because four pages of a six-page document were lost. *Bradford Square Nurse, LLC v. Brown*, No. 2012-CA-001193-I (Ky. App. Jan. 30, 2012); *see also* R. 15-1 at 4–5. In another case, a court held that a contract was unenforceable because—after the parties signed—one party added several essential terms without the other party's permission. *Citizen Fidelity Bank & Trust Co. v. Lamar*, 561 S.W.2d 326, 327–29 (Ky. App. 1977).

Unlike the parties in the above cases, however, Randy cannot show that the agreement here is incomplete. He does not, for example, allege that several pages were lost, or that Preferred Care added essential terms after he signed. So the above cases do not help him. *See Hathaway v. Eckerle*, 336 S.W.3d 83, 89–90 (Ky. 2011) (concluding that a person is bound by the contract he signs "unless he is misled" or "his signature has been obtained by fraud"). By contrast, the arbitration agreement details the essential terms—the arbitration process, the scope of the agreement, and responsibility for costs. R. 1-1 at 2–4. And, of course, Randy signed, and thus, agreed to those terms. *Id.* at 5. Thus, Randy is bound by them. His second argument therefore fails.

### (c) Authority to bind

Third, Randy argues that the arbitration agreement is unenforceable because Randy lacked authority to sign it. R. 15 at 6. In Randy's view, a guardian cannot bind a ward to an arbitration agreement. *Id.* But that argument goes against Kentucky law. State-appointed guardians have broad powers to ensure a ward's "care, comfort, and maintenance" and to "enable the ward to receive medical or other professional care." *See* Ky. Rev. Stat. ("KRS") § 387.660(2)–(3). By contrast, a disabled person, once appointed a guardian, is stripped of several rights—including "the right . . . to enter into contractual relationships." KRS § 387.590(10). So it follows that these rights, once taken from the ward, are vested in the guardian to care for him. And guardians retain that power unless a court says otherwise. *See* KRS § 387.660. The court order appointing Randy as guardian contains no limitations. *See* R. 14-2. Randy thus had the authority to sign the agreement.

Randy responds by comparing guardianships to powers-of-attorney. R. 15 at 6. To compare the two, Randy cites a Kentucky Supreme Court case. *See Extendicare Homes, Inc.*

6

*v. Whisman*, 478 S.W.3d 306 (Ky. 2016).[4]  In *Whisman*, the court held that an attorney-in-fact—one type of agent authorized to act on behalf of another—had no authority to bind a nursing home resident to an arbitration agreement.  *See id.* at 313.

But guardians, of course, are different than attorneys-in-fact.  An attorney-in-fact gets his power from a document called the "power of attorney."  In that document, the person giving up his own rights (the "principal") says exactly what the attorney-in-fact can do.  *See id.* at 321 ("The scope of [the attorney-in-fact's] authority is thus left to the principle to declare[.]" (quoting *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 592 (Ky. 2012))).  So when a court must decide whether an attorney-in-fact has the power to do something, the court looks to the document to see what the principal has allowed.  If the principal did not delegate a certain power, the attorney-in-fact does not have it.  *See id.* at 321 (explaining that the attorney-in-fact can only do what it is "expressly authorized" in the document (quoting *Ping*, 376 S.W.3d at 592)).  That was the case in *Whisman*.

A guardian, unlike an attorney-in-fact, receives his power from the state—not from the ward himself.  A court appoints a guardian when it determines that a disabled person is unable to "manag[e] his personal affairs and financial resources."  KRS § 387.590(10).  Kentucky law then defines what the guardian can do, and the court can further limit his power.  KRS § 387.660.  So *Whisman*—which struck down the agreement because the

---

[4] Preferred Care argues that *Whisman* is preempted by the FAA and thus violates the Supremacy Clause.  R. 14-3 at 16–19.  Preferred Care also argues that *Whisman* is unconstitutional because it violates the Due Process and Equal Protection Clauses by impairing the fundamental right to contract.  *Id.* at 22–25.  But because *Whisman* does not speak to the authority of a *guardian* to bind a ward to an arbitration agreement, the Court need not rule on its constitutionality.

7

principal did not consent—is not instructive here.[5] The question is not whether George allowed Randy to sign the arbitration agreement. Rather, the question is whether Randy—as a court-appointed guardian—had authority under Kentucky law to sign it. And, as explained above, he did. So Randy's third argument fails.

### 2. The scope of the agreement

To determine whether Randy's claims fall within the scope of the arbitration agreement, the Court resolves any doubts in favor of arbitration. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). Here, however, there is little doubt that the agreement covers Randy's claims. The agreement expressly states that it covers claims of "negligence" and any "violation of a right claimed to exist under federal, state, or local law." R. 1-1 at 2. And that is exactly what Randy claims. In his state-court action, he alleges that Preferred Care was negligent and violated George's rights under Kentucky's long-term-care laws. *See* R. 1-2 ¶¶ 46–64. So the agreement covers Randy's claims.

### B.  Howell's Request for Discovery and Hearing

Although it seems that Randy must arbitrate his claims, he makes one request of last resort—an additional opportunity to "develop his invalidity arguments." R. 15 at 8. In Randy's view, the FAA entitles him to further discovery or an evidentiary hearing. *Id.* True, the FAA requires the Court to "hear the parties" before compelling arbitration. 9 U.S.C. § 4. The statute, however, requires only a "limited review to determine whether the dispute is arbitrable." *See Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

---

[5] Randy briefly suggests that the Court should certify this question—whether *Whisman* applies to guardianships—to the Kentucky Supreme Court. But here there is a "reasonably clear and principled course" under Kentucky law, as explained above, so certification is not necessary. *See Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)).

The Court has already reviewed the facts and issues to determine that Randy's claims are arbitrable. And Randy has already presented—and the Court has already rejected—his defenses. *See* R. 12 at 13–15 (procedural unconscionability); R. 12 at 15–16 (void against public policy); R. 12 at 16–17 (fraudulent inducement). Randy presents no new defenses or arguments now. If the Court gave him several chances to delay the inevitable, it would frustrate the FAA's purpose—the "rapid and unobstructed enforcement of arbitration agreements." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983). Even more, based on the discussion above, the Court is "satisfied that the making of the agreement for arbitration . . . is not in issue." *See* 9 U.S.C. § 4. The Court must therefore enforce the arbitration agreement. *See id.* § 2.

### C. Preferred Care's Motion to Enjoin Howell From Pursuing State-Court Action

Preferred Care also moves to enjoin Randy from proceeding any further in his state-court action. R. 14-3 at 28. When a court must compel arbitration, the FAA requires the court to stay its own proceedings—if the issues before that court are subject to the arbitration agreement. *Great Earth Cos. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). The FAA, however, is silent on whether a court must stop a related state-court proceeding involving the arbitrable issues. *Id.* That is the question here.

The Anti Injunction Act ("AIA") provides the answer. Under the AIA, a court can only enjoin state court proceedings if one of three things is true: Congress has "expressly authorized" the stay, the stay is "necessary in aid of [the Court's] jurisdiction," or the stay is necessary to "protect or effectuate its judgments." 28 U.S.C. § 2283; *see also Great Earth*, 288 F.3d at 894 (applying the above AIA exceptions to FAA disputes). As mentioned above,

the FAA does not expressly authorize the stay. And the Court's jurisdiction is not in question. Thus, the only viable justification would be that the stay is necessary to protect the Court's order compelling arbitration.

Preferred Care indeed cites to other cases where courts have enjoined the defendant because it "would effectuate the proper purposes of the Court['s] judgment to compel arbitration." R. 14-3 at 29; *see, e.g.*, *GGNSC Vanceburg, LLC v. Hanley*, No. 13-10-HRW, 2014 WL 1333204 (E.D.K.Y. Mar. 28, 2014). True, these cases show that the AIA allows a court to enjoin the defendant. *See, e.g.*, *Great Earth*, 288 F.3d at 894 (upholding an order enjoining parties from pursuing a state-court action because it was necessary to protect the federal court's arbitration order). None of them, however, say that an injunction is required.

Aside from citing those cases, Preferred Care offers no compelling reason why an injunction is "necessary" to effectuate the order in this case. Yet that is what the AIA requires. Even if Randy boldly intends to violate this order, as Preferred Care worries he might, Preferred Care offers no reason to suspect that Kentucky state courts would proceed contrary to this Court's decision. Indeed, Kentucky state courts have willingly honored valid arbitration agreements in the past. *See, e.g.*, *North Folk Collieries, LLC v. Hall*, 322 S.W.3d 98, 106 (Ky. 2010) (directing the lower court to stay its proceedings pending arbitration); *Kodak Mining Co. v. Carrs Fork Corp.*, 669 S.W.2d 917, 921 (Ky. 1984) (same). So this argument fails.

Further, there is a compelling reason for the Court to avoid interference with the state-court action. It is well-established that, in the spirit of comity and federalism, federal courts should tread lightly when approaching "federal-state relations." *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (quoting *Colorado River Water Conservation Dist. v.*

*United States*, 424 U.S. 800, 817 (1976)).  The Court should therefore avoid friction, when possible, with the Kentucky courts' "rightful independence."  *See id.* at 717–18 (quoting *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500–01 (1941)).  Here, there is considerable potential for friction because the state court must still decide the wrongful death claims, which are not subject to arbitration.  *See* R. 1-2 ¶¶ 80–83.  An injunction would therefore unnecessarily interfere with those proceedings.  Thus, an injunction is not necessary to "protect or effectuate" the Court's Order compelling arbitration.

### III. Conclusion

Randy Howell agreed to arbitrate any claims his father might have against Preferred Care and its affiliates.  He must now make good on that promise.  Accordingly, it is **ORDERED** as follows:

(1) Preferred Care's motion to compel arbitration, R. 14, is **GRANTED**.

(2) Preferred Care's motion to enjoin the defendant from pursuing his state-court action, R. 14, is **DENIED**.

(3) This matter is **STAYED** pending any further proceedings to enforce any award of the arbitrator.

This the 19th day of August, 2016.



Signed By:
*Amul R. Thapar*
United States District Judge

11